**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**LAWRANCE D. MAHOMES** **PLAINTIFF**
***ADC #152147***

**v.** **No: 4:25-cv-01276-BSM-PSH**

**CHRIS BUDNIK, *et al.*** **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Lawrance D. Mahomes filed a *pro se* complaint (Doc. No. 1) and an amended complaint (Doc. No. 4) in December 2025, while he was incarcerated at the Arkansas Division of Correction's Tucker Unit.[1] The Court subsequently granted

[1] Mahomes is now incarcerated at the ADC's Grimes Unit. *See* Doc. No. 10.

Mahomes' application to proceed *in forma pauperis* (Doc. No. 5). After screening Mahomes' amended complaint, he was allowed to proceed with a First Amendment retaliation claim against Defendants Nicholas Wilson and Warden Chris Budnik (the "Defendants").[2] *See* Doc. Nos. 19 & 22. Mahomes' retaliation claim arises from a disciplinary written by Wilson on January 30, 2025, after Mahomes filed an incident report or complaint about Wilson in late November 2024. *See* Doc. No. 4 at 6. Mahomes further alleged that Budnik transferred him to the Tucker Unit on August 14, 2025, in retaliation for requesting an investigation of Wilson's alleged retaliation. *Id.* at 6-7.

Before the Court is a motion for summary judgment, brief in support, and a statement of undisputed facts filed by the Defendants, claiming that Mahomes did not exhaust available administrative remedies before he filed this lawsuit (Doc. Nos. 40-42). Mahomes filed a response (Doc. No. 44). For the reasons described below, the Defendants' motion for summary judgment should be granted, and Mahomes' claims against the Defendants should be dismissed without prejudice for failure to exhaust available administrative remedies.

---

[2] Mahomes' remaining claims against defendants Dexter Payne, Cory D. Evans, and D.W. Allison were dismissed without prejudice for failure to state a viable claim. Doc. No. 22.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is

genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. Analysis

The Defendants argue that Mahomes' claims against them should be dismissed because he failed to exhaust his administrative remedies before he filed this lawsuit. Doc. No. 41. In support of his motion, the Defendants submitted a copy of the ADC's grievance policy, Administrative Directive 19-34 (Doc. No. 42-1); the declaration of April Gibson, the ADC's Inmate Grievance Appeal Coordinator (Doc. No. 42-2); a copy of Grievance GR-25-00418 (Doc. No. 42-3); and a copy of Grievance GR-25-00417 (Doc. No. 42-4). At the Court's direction (Doc. No. 47), the Defendants filed a supplemental declaration of April Gibson (Doc. No. 48) with Mahomes' grievance history attached (Doc. No. 48-1).

### *A. Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136,

1141 (8th Cir. 2014). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 42-1 at 5. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id.* at 6. Inmates are to "specifically name each individual involved in order that a proper investigation and response may be completed." *Id*. at 5. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 6. A problem solver or staff member holding the rank of sergeant or above can collect the

grievance and return the yellow and pink copies of the grievance to the inmate as receipts. *Id.* at 7. The problem solver or staff member investigates the complaint, and may attempt to resolve the complaint by meeting with the inmate or taking certain other steps, but ultimately must provide a written response at the bottom of the form. *Id.* at 7–8. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit either the pink or yellow copy of his Unit Level Grievance Form as a formal grievance. *Id.* at 8. The inmate retains either the pink or yellow copy, whichever he did not submit for Step Two. *Id.* at 9.

The inmate should receive a Response to the Unit Level Grievance Form or an Acknowledgement or Rejection of Unit Level Grievance (Attachment II). *Id.* at 10–11. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director. *Id.* at 11-12. An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II). *Id.* at 12. The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id.* If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the

inmate as rejected. *Id.* Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id.* at 13.

According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 14. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

***B. Exhaustion of Mahomes' Retaliation Claims***

The Defendants argue that Mahomes did not exhaust administrative remedies with respect to his claims because he did not grieve his complaints of retaliation through the ADC's grievance procedure. Doc. No. 41 at 5. In her declarations, Inmate Grievance Appeal Coordinator Gibson stated that she searched Mahomes' grievance history and found two grievances filed between January 1, 2025 and December 18, 2025, that might tangentially relate to Mahomes' claims in this case: GR-25-00417 and GR-25-00418.[3] *See* Doc. No. 42-2 at ¶ 7; Doc. No. 48 at ¶ 18. (The disciplinary at issue in this lawsuit was dated January 30, 2025, and Mahomes filed his amended complaint on December 18, 2025.)

---

[3] According to Mahomes' grievance history, he submitted GR-25-00425 on April 25, 2025, concerning a medical issue, and he submitted GR-25-00789 on July 18, 2025, regarding his legal mail. Doc. No. 48-1. He filed no other grievances in 2025 according to his grievance history.

Mahomes initiated GR-25-00418 and GR-25-00417 on April 20, 2025, several months after he received the alleged retaliatory disciplinary from Wilson (and well before he alleges Budnik transferred him to the Tucker Unit in August 2025). Doc. No. 42-3 & 42-4. In these grievances, Mahomes complained about his housing assignment and grieved that he did not want to move to barracks with inmates who should be on his enemy alert list.[4] *Id.* He named Wilson in both grievances, but did not mention the January disciplinary he received or allege any retaliation by Wilson. *Id.* Rather, he complained about inmates who were housed near him in April of 2025. *Id.*

Mahomes asserts that these grievances are irrelevant to his claims and argues that he exhausted his claims by appealing the disciplinary he received on January 30, 2025. Doc. No. 44 at 1-2. He provided a copy of the disciplinary, but did not provide a copy of his disciplinary appeal or the decision on appeal. *Id.* at 4. However, even if Mahomes had asserted that Wilson issued the disciplinary with a retaliatory motive in his disciplinary appeal, he cannot rely on statements he made in defense of the disciplinary he received, or in his appeal of that disciplinary conviction, to serve as a grievance of his claims. Rather, complaints of retaliation are grievable through the ADC's grievance procedure even though complaints

[4] One of his alleged enemies was an inmate named Justin Richardson. The January 30 disciplinary also involved Justin Richardson.

regarding disciplinaries are not. *See* Doc. No. 42-1 at 3 (providing that disciplinaries are not grievable, but claims of retaliation are grievable even if related to a non-grievable issue). Further, an inmate must use the grievance procedure to lodge complaints against staff. *See* Doc. No. 42-1 at 2 (explaining that a grievance may be submitted by an inmate regarding "[a]n action of another employee(s) . . . that personally affects the inmate; or . . . [a]n incident occurring within the facility that personally affects the inmate.").

As stated in *Jones v. Bock, supra,* "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Mahomes' claims of retaliation were grievable through the ADC's grievance procedure, but he filed no grievances alleging retaliation by Wilson in connection with the January 30 disciplinary or regarding his transfer to the Tucker Unit in August 2025 by Budnik. Mahomes was therefore required to use the ADC's grievance procedure to grieve alleged retaliation by staff members, and he did not do so. Accordingly, he has not exhausted his claims of retaliation in this case, and those claims should be dismissed.

## IV. Conclusion

For the reasons stated herein, the Court recommends that the Defendants' motion for summary judgment (Doc. No. 40) be GRANTED, and Mahomes' claims against the Defendants be DISMISSED WITHOUT PREJUDICE due to Mahomes' failure to exhaust available administrative remedies.

SO RECOMMENDED this 13th day of November, 2026.

UNITED STATES MAGISTRATE JUDGE